## Hanner v. Tidwell.

Oct. 2, 1942.

428

Eaton & Eaton for appellant.

Jack E. Fisher for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Appellee sued appellant on a note allegedly executed by appellant's decedent and reading as follows:

"One Day after date I promise to pay to Geo. W. Tidwell $500.00 five hundred dollars at 6% interest until paid. For value received of him for cash loaned to me this Jan. 27—1937.

"W. C. O'Bryan."

The note was written by appellee with a fountain pen on the back of an envelope and allegedly signed by O'Bryan with a lead pencil. By his answer, appellant traversed the material allegations of the petition, and specifically denied that his decedent had executed or delivered the note or that appellee had loaned his decedent money or any other thing of value, or that there was any consideration therefor. Affirmatively, appellant pleaded non est factum, lack of consideration, that appellee had failed to list the note for taxation, and that O'Bryan, at the time the note was executed, and thereafter until the time of his death, possessed ample cash, whereas, appellee was without funds with which to have made the alleged loan. The latter allegations were stricken on motion of the appellee, who traversed the remaining allegations by reply. At the trial, which resulted in a verdict for appellee, the proof went far to establish the defenses pleaded, including those stricken, and in addition, showed that although O'Bryan did not die until some three and a half years after the date of the note, no action was ever instituted to recover thereon until after his death. However, in view of our conclusion that there was a fatal variance between the cause of action alleged by appellee and the testimony introduced by him in support thereof, it is unnecessary to refer further to the testimony offered by appellant.

Appellee's witness, James Kirk, was the only person who testified to the execution of the note, and his account of the transaction follows:

"A. Well, sir, I was there (Tidwell's house where O'Bryan was staying during the high water)

and we was eating dinner the day I got there and Mr. O'Bryan said to me after Tidwell made us acquainted, he said to me 'Kirk, I have offered Tidwell a good proposition, I want to sell him my property, I have got a farm and a clay-pit on it that will make him a fortune.' He didn't mention where it was, and the conversation went on for a day or so that way, so Mr. Tidwell was talking to him back and forth about the matter, and a few days later than that—I don't know what day it was—Mr. Tidwell told him—says I will tell you what I will do, I don't want your farm, I am not interested in your farm, but I will buy the store building on the corner of 3rd and Jackson, and the building behind it, and your home, and two other places on 3rd street for twenty-five hundred dollars, so they talked on about that for a day or so, so on the morning that they made the deal, Mr. Tidwell went in the kitchen where his wife was washing the dishes, and he came back in there and says 'Mr. O'Bryan, I will pay you five hundred dollars for that property that I have mentioned, and then I will take it out renting it and take out the taxes and pay you the balance of the two thousand dollars that I take in, and Mr. O'Bryan studied a while and says 'I am going to take you up', and then Mr. Tidwell went back into his kitchen talking to his wife and come back and Mr. O'Bryan says 'I will take you up' and Mr. Tidwell went to his trunk and took the tray out and pulled out a package, there was several packages in it and pulled out a bill folder and counted out the money on the table to Mr. O'Bryan, it looked like tens and twenty dollar bills, and Mr. O'Bryan was counting, and he counted five hundred dollars, whether it was there I didn't know, I didn't count it, and they counted five hundred dollars out and Mr. O'Bryan took it and put it in a pocket book.

"Q. Was there any paper executed there? A. Yes, sir.

"Q. What was it if you know? A. A large envelope, Mr. O'Bryan picked the envelope up.

"Q. Where did he pick it from? A. From the table, says 'This will do' and Mr. Tidwell wrote it out with a fountain pen, and asked Mr. O'Bryan to sign it with the fountain pen, and he says 'I will use

a pencil, this will do and I will take care of it later. I may not have any property when the flood is gone.'

\* \* \* \* \*

"Q. What was it they said about how they was going to fix this about showing the five hundred dollars? A. Mr. O'Bryan said he would fix it when the water went down, that he would fix it showing that he could pay that out of the rent after deducting the taxes."

On cross-examination, the witness adhered to his account of the transaction, emphasizing that it was a sale by O'Bryan to Tidwell of five pieces of property for $2,500, of which, the $500 mentioned in the note was a partial payment. We quote the following:

"Q. Mr. Tidwell put $500.00 down and left a balance of $2,000.00 to be paid out of rents? A. Yes, sir, after the taxes were paid on the buildings, he was to pay the balance of the two thousand dollars."

Assuming that the note was actually executed by the decedent, the conclusion is inescapable that it was executed without consideration, not as an evidence of indebtedness or of a promise to pay, but solely as a memorandum, however contradictorily worded, of the fact that appellee had paid $500 on the purchase price of real estate which the decedent was to convey to him on payment of the balance. The only obligation of the decedent was to convey the real estate, and since he failed to do so, appellee's cause of action was not upon the alleged note but in assumpsit for money had and received. Bedinger v. Whittamore, etc., 2 J. J. Marsh. 552, at page 563. See, also, United Cooperative Realty Co. v. Hawkins et ux., 269 Ky. 563, 108 S. W. (2d) 507. It is argued by appellee's counsel that because of the provisions of Sections 129, 130, Civil Code of Practice, the Court properly ignored the variance and submitted the case to the jury. But this argument overlooks the ensuing section (131) which provides that if "the allegation of the claim or defense, to which the proof is directed, be unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections, but a failure of proof." Wickliffe v. First National Bank of Central City et al., 184 Ky. 783, 212 S. W. 581.

All questions not expressly passed upon are reserved.

Upon a return of the case, parties should be permitted to amend their pleadings so as to present the real issues involved in their controversy.

Judgment reversed.