[No. 42472. En Banc. August 30, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. *28 Containers of* THICK & FROSTY, *Appellants.*

*Pebbles, Swanson & Lindskog,* by *Ralph G. Swanson, P. Cameron DeVore* and *Nancy P. Gibbs* (of *Davis, Wright, Todd, Riese & Jones*) (*Ellis Arnall* and *Elliott H. Levitas* (of *Arnall, Golden & Gregory*) and *Murry D. Sayer,* of counsel), for appellant.

*Slade Gorton, Attorney General,* and *Emanuel E. Rosatto, Senior Assistant,* for respondent.

FINLEY, J.—This is an appeal by the Birds Eye Division of General Foods Corporation, manufacturer of a food product advertised as Thick & Frosty, from a trial court decision affirming an embargo order placed upon 28 containers of this product by the Washington State Department of Agriculture.

The containers were embargoed on June 1, 1970, in Bellingham, Washington, pursuant to the provisions of RCW 15.38.040 and RCW 69.04.110. In sustaining the embargo order, the trial court found the following pertinent facts upon the basis of the testimony, exhibits, and record before the court: (1) that Thick & Frosty is a product containing a percentage of milk to which fat or oil other than milk fat has been added;[1] (2) that Thick & Frosty is a frozen product and is stored at zero degrees Fahrenheit, the same as frozen dairy products such as ice cream; (3) that the labeling on the advertising material in which the Thick & Frosty

---

[1]The court found that Thick & Frosty consists of the following ingredients: Water, Invert Sugar Syrup, Sugar, Hydrogenated Vegetable Oil, Nonfat Dry Milk, Glycerol, Sorbitol, Propylene Glycol, Cocoa (processed with alkali), Cellulose Gum, Natural and Artificial Flavors, Carrageenin, Dextrose, Emulsifier, Salt, and Guar Gum.

plastic container is packaged attractively depicts in two large pictures what appears to be a milk shake, accompanied by the following words and phrases appearing several times as indicated: "Shake"—seven times; "Makes Five 8-Oz. Shakes"—twice; "Frozen Thick Shake Concentrate"—three times; "Frosty Cold Thick Shake You Make at Home"; "Directions to Make One Shake"; "For thinner shake, add more milk"; (4) that General Foods, in using the word "shake" on the label of Thick & Frosty, is capitalizing on the widespread use of the word "shake" as synonymous with "milk shake" so as to confuse the general public; (5) that Thick & Frosty is displayed and sold from refrigerated cases the same as ice cream and ice milk products are displayed and sold; (6) that in the frozen state Thick & Frosty looks like ice cream or ice milk; (7) that General Foods has, by substituting vegetable oil in place of milk fat in Thick & Frosty, made a product which appears to be of greater value than it is. Based upon these findings of fact, the trial court concluded: (1) that Thick & Frosty is in imitation and semblance of genuine dairy products, to wit: ice cream and ice milk; (2) that Thick & Frosty is a filled dairy product as defined in the filled dairy products act (chapter 15.38 RCW) and an economically adulterated food product as defined in the Uniform Washington Food, Drug, and Cosmetic Act (chapter 69.04 RCW); (3) that as a filled dairy product Thick & Frosty is subject to the prohibitory provisions of chapter 15.38 RCW and chapter 69.04 RCW; (4) that Thick & Frosty is misbranded and mislabeled in violation of the Uniform Washington Food, Drug, and Cosmetic Act (chapter 69.04 RCW).

In response to this ruling supporting the embargo order, the appellant argues that Thick & Frosty is neither a "filled dairy product" within the meaning of RCW 15.38.010(2) nor a misbranded product under RCW 69.04.250. We disagree.

The package and container described by the trial court in which Thick & Frosty is marketed are pictured below.

The purpose of the filled dairy products act was stated by the legislature to be as follows:

Filled dairy products resemble genuine dairy products so closely that they lend themselves readily to substitution for and confusion with such dairy products and in many cases cannot be distinguished from genuine dairy products by the ordinary consumer. The manufacture, sale, exchange, purveying, transportation, possession, or offering for sale or exchange or purveyance of filled

dairy products creates a condition conducive to substitution, confusion, deception, and fraud, and one which if permitted to exist tends to interfere with the orderly and fair marketing of foods essential to the well-being of the people of this state. It is hereby declared to be the purpose of this chapter to correct and eliminate the condition above referred to; to protect the public from confusion, fraud and deception; to prohibit practices inimical to the general welfare; and to promote the orderly and fair marketing of essential foods.

RCW 15.38.001. In response to this declaration of purpose,

and concerning the constitutionality of the filled dairy products act, we stated the following in *Reesman v. State,* 74 Wn.2d 646, 651, 445 P.2d 1004 (1968):

> The legislature has thus put its finger squarely upon the evil which the enactment was designed to guard against, *i.e.,* the manufacture, distribution and sale of a substitute dairy product which, by its resemblance to the natural product, is conducive to consumer confusion and deception. This has been held to be a valid basis upon. which to rest the exercise of the state's police power, for the prevention of deception and fraud upon the consuming public is in the public interest. *Carolene Prods. Co. v. United States,* 323 U.S. 18, 89 L. Ed. 15, 65 Sup. Ct. 1, 155 A.L.R. 1371 (1944); *Sage Stores Co. v. Kansas ex rel. Mitchell,* 323 U.S. 32, 89 L. Ed. 25, 65 Sup. Ct. 9 (1944); *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 10 L. Ed. 2d 248, 83 Sup. Ct. 1210 (1963); *Poole & Creber Market Co. v. Breshears,* 343 Mo. 1133, 125 S.W.2d 23 (1939); *Hathaway v. McDonald,* 27 Wash. 659, 68 Pac. 376 (1902). The underlying objective, therefore, of the legislation cannot be said to be unreasonable, arbitrary, and capricious, or in violation of a constitutional mandate.

The constitutionality and soundness of the filled dairy products act, as a measure for the protection of the consuming public from confusion, deception, and fraud, is well-settled.

Before a particular product may be subjected to the injunctive penalties of the act, a two-part statutory test for "filled dairy products" must be met.[2] First, the product must contain some milk to which any oil or fat other than

---

[2]"The term 'filled dairy products' means any milk, cream, or skimmed milk, or any combination thereof, whether or not condensed, evaporated, concentrated, frozen, powdered, dried, or desiccated, or any food product made or manufactured therefrom, to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat so that the resulting product is in imitation or semblance of any dairy product, including but not limited to, milk, cream, sour cream, skimmed milk, ice cream, whipped cream, flavored milk or skim-milk, dried or powdered milk, cheese, cream cheese, cottage cheese, creamed cottage cheese, ice cream mix, sherbet, condensed milk, evaporated milk, or concentrated milk . . ." RCW 15.38.010(2).

milk fat has been added, and second, the resulting product must be "in imitation or semblance" of any dairy product. In the instant case, the product embargoed contains 3.5 percent nonfat dry milk to which hydrogenated vegetable oil has been added, and therefore meets the first statutory requirement. The second requirement, concerning the "imitation or semblance" of a dairy product, presents the real point of controversy for this court.

In *Reesman v. State, supra,* we had occasion to address this latter requirement in reviewing the application of the filled dairy products act to the distribution of "Farmer's Daughter", a product found to be "in semblance of milk" and therefore a filled dairy product. This particular product was described as follows:

> This is a high protein drink, consisting of powdered milk from which the butter fat has been removed and to which has been added, water, vegetable oil, sodium caseinate, corn syrup solids, starch, monodiglyceride, carotene, and units of vitamins A and D. The product, when compounded, is the color of milk, has the general viscosity of milk, and to some tastes and smells like milk. It is to be distributed in a paper carton identical in shape and design to a standard half-gallon paper milk carton. A dairy and a dairymaid are pictured on the carton, around and about which is written in varying size print, "farmer's daughter," "Hi-Protein Drink," "Pasteurized Homogenized," "Delicious Nutritious," "Contains No Animal Fat," and "modern science has now achieved a unique, healthful liquid—as nutritious and tasty as the natural product. It is made possible by a secret formula recently discovered by one of America's leading dairy scientists." The ingredients are listed and Reesman's Dairy is named as the processor and distributor.
>
> Because of the composition and milk-like qualities of the product it comes within the scope of the Filled Dairy Products Act, RCW 15.38 . . .

*Reesman v. State, supra* at 647-48. The above-described product characteristics upon which we based our conclusion that "Farmer's Daughter" qualified as a filled dairy product are strikingly similar to the characteristics of

Thick & Frosty. According to the uncontroverted trial testimony of William Knutzen, Chief Food Inspector for the Washington State Department of Agriculture, Dairy and Food Division, and Dr. William Roth, Director of the Washington State Food and Drug Laboratory, Thick & Frosty *looks like ice cream or ice milk in the grocery store frozen dairy compartment*; further, *the color is not distinguishable from ice cream.* Similar to the finding in *Reesman* that Farmer's Daughter had the general viscosity of milk, Frank Crews, Chief Agricultural Microbiologist for the Department of Agriculture testified that, based upon his expertise in this area, there was *no difference in texture and appearance between ice milk and Thick & Frosty,* and that when this latter product is ready for use, *one could easily assume that it was ice cream or ice milk.* And just as Farmer's Daughter was found to taste and smell like milk to some, both Mr. Crews and Dr. Roth testified that Thick & Frosty had a *flavor like ice cream or ice milk,* that soft ice cream often has the strong flavor attributed at trial to Thick & Frosty, and frequently bears the mouth-coating quality of Thick & Frosty when this latter product is eaten directly from the container. Even the laboratory manager for the technical research group of the Birds Eye Division of General Foods testified at trial that Thick & Frosty resembles an all-dairy milk product. The only real differences in the characteristics of ice cream or ice milk and Thick & Frosty which can be gleaned from the trial record appear to be (1) that Thick & Frosty stays at the bottom of the glass when one adds milk to it for purposes of making a milk shake (unlike the floating quality of ice cream as a result of "overrun"), and (2) Thick & Frosty spoons easier than ice cream at colder temperatures.

With the above factors of similarity before us, we turn now to an examination of the trial court's conclusion that Thick & Frosty is in imitation or semblance of ice cream and ice milk, and consider whether the trial record supports such a conclusion. The *Reesman* test for "imitation or semblance" is identical to that urged by the appellant

Birds Eye, that is: appearance, taste, texture, consistency, and performance under certain conditions. We find that these elements for comparison suggested by the appellant afford satisfactory bases for assessing the likelihood of consumer fraud since they represent the possibilities of initial deception at the point of purchase as well as continuing confusion thereafter. The trial record indicates that any controversy concerning the elements of taste, texture, and consistency involved minor degrees of variance between the parties. Regarding the element of performance, while Thick & Frosty spoons easier than ice cream at colder temperatures and remains at the bottom of a glass of milk, both products mix well with milk to form a milk shake similar to that served at a drive-in restaurant. As stated earlier, uncontroverted testimony relating to the element of appearance placed Thick & Frosty identical to ice cream or ice milk. Thus, the record amply supports the ruling of the trial court that Thick & Frosty is a "filled dairy product", being "in imitation or semblance" of a dairy product. Pursuant to RCW 15.38.040, as a filled dairy product, Thick & Frosty is deemed "adulterated" for purposes of the Uniform Washington Food, Drug, and Cosmetic Act (RCW 69.04.001-.870), and "misbranded" under RCW 69.04.250. Under the provisions of both the filled dairy products act and the Uniform Washington Food, Drug, and Cosmetic Act, the 28 containers of Thick & Frosty which are the subject of this action were properly embargoed as having been distributed in violation of state law.[3]

---

[3]This does not mean that General Foods is forever barred from marketing Thick & Frosty within the state of Washington. However, as we stated in *Reesman v. State*, 74 Wn.2d 646, 653, 445 P.2d 1004 (1968), the product must incur some modification:

[T]he pertinent statute of this state prohibits dealings in dairy products containing a fat or oil other than milk fat *only* if such products are in "imitation or semblance" of a genuine dairy product. Manufacturers and distributors of products such as Farmer's Daughter are not, therefore, absolutely prohibited from carrying on business. They can readily avoid the limited aspect of the legislation by not making and marketing their products so as to be in imitation or

There has been no contention before this court, and certainly no suggestion in this opinion, that Thick & Frosty is not a wholesome food product. However, consumers have a right not only to purchase wholesome food products but also to be informed and advised adequately as to whether the product is an imitation or substitute for some well-known, widely used organic or other natural food product. The packaging and container of the product here involved, *i.e.*, the manner in which Thick & Frosty is presented to consumers in retail stores, does not adequately apprise them of the nature of the product but may very well mislead or deceive them. The police power of this state may be exercised by the legislature quite appropriately in relation to the interest of the consuming public. The legislature has legitimately exercised its judgment in this regard to protect the consumer from confusing, misleading, and deceptive merchandising practices. *Reesman v. State, supra.* We should exercise judicial restraint in not substituting our judgment for that of the legislature by so interpreting or limiting the legislation that it becomes a useless gesture.

For the reasons indicated, the judgment of the trial court sustaining the embargo order is hereby affirmed.

HALE, C.J., ROSELLINI, HUNTER, and BRACHTENBACH, JJ., concur.

UTTER, J. (dissenting)—The difficulty with the resolution of the issues in this case by the majority opinion is that the basis for the trial court's action was its belief as stated in finding of fact No. 9 that

---

semblance of a dairy product. The scope of the statute is thereby limited to and logically related to its purpose.

Pursuant to RCW 69.04.250, the Thick & Frosty package must bear "in type of uniform size and prominence, the word 'imitation' and, immediately thereafter, the name of the food imitated;" here, ice cream and ice milk. On the other hand, the filled dairy products act requires that the appellant modify such characteristics of Thick & Frosty as are in imitation or semblance of ice cream and ice milk, *i.e.*, those qualities of the product which bear a causal relation to consumer confusion and deception.

in this part of the country, the word "shake" is a colloquialism for "milk shake", a widely recognized dairy product. General Foods in using the word "shake" on the label of Thick and Frosty is capitalizing on the widespread use of the word "shake" as synonymous with "milk shake" so as to confuse the general public.

An examination of the findings of fact, conclusions of law and the court's oral opinion leads to the unmistakable belief that this was the basis for the trial court concluding that Thick & Frosty violated the Washington filled dairy products act and the Uniform Washington Food, Drug, and Cosmetic Act as a misbranded product.

The trial court is not supported on this theory by this court for two different reasons. The state alleged under the filled milk act that Thick & Frosty was in imitation or semblance of "ice cream or ice milk". The state did not allege the product was in imitation of a milk shake. On this ground alone, the trial court's initial reasoning was in error. Additionally, the record did not support the trial court's conclusion that the word "shake" is a colloquialism for "milk shake".

Inasmuch as the trial court cannot be supported on its sole reason for concluding Thick & Frosty violated the filled milk act, I believe this court should either reverse the embargo or, at a minimum, remand the case for further testimony and more specific findings of fact on the theory espoused by the majority.

To hold as we now do, places Washington alone, out of 50 states in the United States, in embargoing Thick & Frosty as violating a filled milk act. If the majority of this court believes we should adhere to this position, it should be done only after a trial on the specific issues framed by the majority, supported by findings of fact made with this test in mind.

Illustrative of the difficulty in deciding this case on the majority's theory, on this record, is the language contained in finding of fact No. 7 which the majority fails to discuss. As I understand the majority opinion, it establishes as the

test for determining whether a product is in imitation or semblance of ice cream or ice milk, the appearance, taste, texture, consistency and performance of a product under certain conditions. The majority states:

> We find that these elements for comparison suggested by the appellant afford satisfactory bases for assessing the likelihood of consumer fraud since they represent the possibilities of initial deception at the point of purchase as well as continuing confusion thereafter.

The absence of deception and confusion would seem to be conclusively answered in the body of the trial court's finding of fact No. 7 where the trial court found:

> That Thick and Frosty is a manufactured product, not a natural one, and is unlike any other product. It is designed to be mixed and consumed in the home and is not designed to be consumed in the form in which it is sold. It is consistently crystalline in structure, more so than ice milk, or in some cases ice cream, as can be seen by visual observation. When consumed it tends to coat the inside of the mouth. It blends more easily with milk than ice cream or ice milk at like temperatures. It is more dense and heavier than most ice creams or ice milk. It has a more concentrated flavor as it comes from the package than ice cream or ice milk.

This finding, on the majority's theory, would seem to compel a holding in favor of Thick & Frosty.

The trial court had the opportunity to see and taste the product in its natural state. The presence of some testimony in the record at variance with its findings would therefore not be determinative.

Completely aside from the question of whether the record supports the majority's theory of what test is to be applied to determine if a product is in imitation or semblance of a specified dairy product, I believe the wrong test is applied by the majority. The majority concedes the only constitutional justification for the filled milk act is as a consumer protection measure. This was established in *Reesman v. State,* 74 Wn.2d 646, 651, 445 P.2d 1004 (1968). Reality dictates that the consumer buys this particular

product in a container as shown by photographs in the majority opinion. The consumer does not open the package and make a milk shake with the concentrate at the point of purchase in the store.

In *Reesman*, the trial court specifically found the product to be "in semblance of milk". We there emphasized, at page 653, that the manufacturer of the product could avoid the impact of the act "by not making and marketing their products so as to be in imitation or semblance of a dairy product." A separate concurring opinion emphasized the distributors of "Farmer's Daughter" were properly enjoined because the product might tend to mislead and deceive the consumers into believing they were purchasing milk and stressed that, under the circumstances in the case, due to the marketing techniques, "the 'semblance' can well become deceptive."

There is no testimony in this case that any consumer confusion exists in the purchase or marketing of Thick & Frosty. On the contrary, the only testimony regarding the issue of whether a purchaser would be confused when buying this product unopened in the market is from one of the state's witnesses. The following was asked on cross-examination of this witness:

Q. In the package and in the carton as they appear in the market, one could never be confused that that is ice cream, could they? A. No, I wouldn't look at it and say that you would believe it is ice cream in the carton as it is marketed.

Nowhere on the wrapper of Thick & Frosty is it indicated the product is ice cream or ice milk. Although it is indicated it can be used when milk is added to make five shakes, the word "concentrate" is used to describe the product. To assume retail consumers are not aware of the plain meaning of the wrapper of a nationally advertised product and need the protection of the police power of the state when no deception or fraud is shown, strains my credulity. On a similar issue, it was observed "it is incredible that as of this date shoppers do not know what is meant

by 'condensed skimmed milk'." *Defiance Milk Prods. Co. v. Du Mond,* 309 N.Y. 537, 542, 132 N.E.2d 829 (1956). For this additional reason I would reverse the judgment of the trial court establishing the embargo and establish a different test than the majority has applied on the issue of whether consumer confusion, in fact, exists.

The majority does not deal with the issue of whether Thick & Frosty is misbranded or mislabeled pursuant to the Uniform Washington Food, Drug, and Cosmetic Act. It is if (1) its label is false or misleading in any particular, or (2) if it is an imitation of another food. RCW 69.04.250. RCW 69.04.250(3) requires imitation, not semblance, and there is no finding or testimony in the record that the product is in imitation of any dairy product. A determination in finding of fact No. 10 that "In the frozen state Thick and Frosty looks like ice cream or ice milk" states no more than that there is a physical semblance and does not support a violation of this section of the statute. *Baltimore Butterine Co. v. Talmadge,* 32 F.2d 904, 909 (S.D. Ga. 1929), *aff'd,* 37 F.2d 1014 (5th Cir. 1930); *Midget Prods., Inc. v. Jacobsen,* 140 Cal. App. 2d 517, 295 P.2d 542 (1956); *Aeration Processes, Inc. v. Jacobsen,* 184 Cal. App. 2d 836, 8 Cal. Rptr. 85 (1960); *Coffee-Rich, Inc. v. State Bd. of Health,* 192 Kan. 431, 388 P.2d 582 (1964). There is also no supportable finding of fact that the labeling of Thick & Frosty is misleading pursuant to RCW 69.04.250(1).

In finding of fact No. 9, which we have previously quoted, the court does not specifically find "milk shake" means only a "shake" made with ice cream or ice milk and there is no substantial testimony in the record to compel such a finding. There is, as well, no testimony in the record to support this finding.

The court may not take judicial notice of the statements in finding of fact No. 9. Facts of which judicial notice may be taken must be capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy and verifiable certainty. Judicial notice may not be taken of a custom or usage, local in nature, without

the proof of its existence and application. *State ex rel. Humiston v. Meyers,* 61 Wn.2d 772, 779, 380 P.2d 735 (1963); *Hoppe v. State,* 78 Wn.2d 164, 170, 469 P.2d 909 (1970).

I therefore dissent for the following reasons: (1) We are applying a different test than that applied by the trial court to determine a violation of the filled milk act and to use its findings and conclusions, which are oriented to an entirely different issue, is unwise and improper. On this ground alone the case should, at a minimum, be remanded for further testimony and entry of supplemental findings of fact and conclusions of law. (2) The trial court's finding of fact No. 7 compels a conclusion different from the majority if their test is to be applied. (3) The majority uses the wrong test to determine "imitation or semblance". (4) The opinion fails to dispose of the issues concerning the Uniform Washington Food, Drug, and Cosmetic Act.

HAMILTON and STAFFORD, JJ., and LAWLESS, J. Pro Tem., concur with UTTER, J.

Petition for rehearing denied November 29, 1973.