**BENJAMIN SETZER and CAROLENE PRODUCTS COM-
PANY, a corporation, v. NATHAN MAYO, Commissioner
of Agriculture.**

9 So. (2nd) 280                                                En Banc
January 27, 1942          .          Rehearing Denied April 3, 1942

H. H. Wells, and James H. Finch, for petitioners.

H. E. Carter and William C. Pierce, for respondent.

TERRELL, J.:

The legislature of 1941 enacted Chapter 20496 defining and prohibiting the manufacture, possession, or sale of "Filled Milk." The pertinent part of Section 1 of the Act is as follows:

"That the term "Filled Milk" means any milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried or desiccated, to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, whether in bulk or in containers, hermeti-

cally. sealed or unsealed; provided, that this definition shall not be held or construed to mean or include any milk or cream from which no part of the milk or butter fat has been extracted, whether or not condensed, evaporated, concentrated, powdered, dried or desiccated, to which has been added any substance rich in vitamins, nor any distinctive proprietary food compound not readily mistaken for milk or cream or for condensed, evaporated, concentrated, "powdered, dried, or desiccated milk or cream, provided such compound (1) is prepared and designed for the feeding of infants or young children, sick or infirm persons, and customarily used on the order of a physician; (2) is packed in individual containers bearing a label in bold type that the contents are to be used for said purposes and, provided further, that nothing in this definition shall be held or construed to prevent the use, blending or compounding of chocolate as a flavor with milk, cream, or skimmed milk, desiccated whether in bulk or in containers, hermetically sealed or unsealed, to or with which has been added, blended or compounded no other fat or oils than milk or butter fat."

Section 5 of said Act imposes on the Commissioner of Agriculture the duty of enforcing it, in obedience to which he instituted this suit in the Circuit Court of Duval County charging Benjamin Setzer, a retail store operator, with having in possession and selling "Milnut", a product condensed by the Carolene Products Company. Carolene Products Company was permitted to intervene. Both defendants filed answers to which motions to strike were interposed. Benjamin Setzer also moved to dismiss the bill of complaint. The latter motion was denied and the

motions to strike were granted. From these orders, the case was brought here for review on certiorari.

A half dozen questions are argued but they all turn on that of the constitutional validity of the act and whether or not the pleadings make an issue of fact on which testimony may be taken to determine whether or not "Milnut" as sold and distributed by petitioners is condemned by the act drawn in question. If such an issue was presented, it was error to strike the answers.

The law is settled in this country that the power to regulate, restrict, or prohibit the sale of "Milnut" or any species of filled milk is one for the legislature in the exercise of its police power and that neither the verdict of a jury or the finding of a court from balancing evidence can be substituted for it. In such matters, the power of the legislature will not be intercepted unless it be shown that the act assaulted had no material relation to the legislative purpose; in other words, it must appear from a consideration of the purpose of the act that it transcends the bounds of reason and becomes a mere arbitrary abuse of legislative power. If there is room for difference of opinion as to whether the product outlawed is deleterious to health or morals, the judgment of the legislature will stand. Neither is the fact that it is shown to be wholesome sufficient to overthrow the act.

Applying this rule, there is nothing here to cast the stigma of invalidity on the act in question. It may be that some harmless articles will fall within the confines of the definition of the prohibited article or that some harmful ones may not be included but that is far from a valid reason to restrict the legislature in

defining what constitutes or does not constitute a proper and wholesome food. Such statutes were designed to prevent fraud and protect the public health by prohibiting the manufacture and sale of foods that are injurious to the latter. Carolene Products Company v. Wallace, et al., 27 Fed. Supp. 110, affirmed in 308 U. S. 506, 60 Sup. Ct. 113, 84 L. Ed. 433; Hebe Company, et al., v. Shaw, et al., 248 U. S. 297, 39 Sup. Ct. 125, 63 L. Ed. 255; United States v. Carolene Products Company, 304 U. S. 144, 58 Sup. Ct. 778, 82 L. Ed. 1234; Carolene Products Company, et al., v. Mohler, et al., 152 Kan. 2, 102 Pac. (2nd) 1044.

The latter decision involved an act of Kansas which made it unlawful to manufacture, sell, keep for sale, or have in possession with intent to sell or exchange, any milk, cream, skimmed milk, buttermilk, condensed or evaporated milk, powdered milk, condensed skimmed milk, or any of the fluid derivatives of any of them to which has been added any fat or oil other than milk fat either under the name of said products, or articles or the derivatives thereof, or under any fictitious or trade name whatever.

The act in question is not so comprehensive and direct as the Kansas Act. It denounces filled milk as defined therein as an adulterated article of food, injurious to health and its sale a fraud on the public but there follow some exceptions. The bill of complaint charges defendants with having in possession and offering for sale "filled milk" as defined and condemned by the act; it then charges that the article sold does not come within any of the exceptions as defined in the act.

The answer of the defendants squarely contradicts many allegations of the bill of complaint. It admits

that "Milnut" as such is condemned by the act but says that its product does not come within the meaning of the prohibition. The answers contain specific allegations as to the content of its product, the manner of its preparation, the way it is branded, and says that it is superior to whole or evaporated milk as a food and in vitamins A and D. The answers further allege that defendant's products are nutritious and wholesome, that they meet every requirement of the State and Federal Pure Food and Drugs act and that it is not adulterated, injurious to health, or a fraud on the public as contemplated by the Act.

The pleadings in other words make an issue of whether or not "Milnut" or "Milnot" as owned and distributed by defendants is proscribed by the Act. On the general power of the legislature to leave open, regulate, or prohibit the sale of milk to which has been added, or which has been blended or compounded with any fat or oil other than milk fat, the cases cited are conclusive and settle the constitutional validity of the Act. This holding is supported by years of experience and extensive investigation in the sale and effects of milk compounds in which certain vegetable oils have been substituted for milk fats, including their effect on the health.

The underlying purpose of such acts is to prescribe a standard of dairy products in the interest of public health and the general welfare. Most of them proceed on the theory that filled milk as a substitute for pure milk is generally injurious to health and perpetrates a fraud on the public. All cases to which our attention has been drawn have to do with the substitution of coconut oil for butter fat. It is settled by these cases that coconut oil is deficient in vitamin

content as compared with butter fat but we are not advised as to cotton seed oil and other substitutes for butter fat. It has been shown beyond cavil that butter fat is an important food element in pure milk, that it is rich in vitamins, food elements essential to balanced nutrition and that such vitamins are found to be absent from many vegetable oils. It has also been demonstrated that the use of filled milk as a substitute for pure milk results in undernourishment and malnutrition and diseases incident thereto.

The statute in question proscribes all fats and oils but milk fat as a substitute for butter fat. And while we uphold the validity of the Act, we are conscious of the rule that a valid statute may be assailed by proof of facts showing that as applied to a particular article, it is without support in reason because the article, although within the proscribed class, is so different from others in the same class as to be without the reason for the prohibition, the effect of the proof depending on the circumstances of the case. United States v. Carolene Products Company, supra, and cases cited.

This opinion is planted squarely on the doctrine of the last cited case and the case of Carolene Products Co. v. Wallace, et al., 27 Fed. Supp. 110, affirmed without opinion in 308 U. S. 506, and as we interpret these cases, it is not sufficient to prove that cotton seed oil and other substitutes for butter fat are wholesome and nutritious, if it is shown that in addition to being wholesome and nutritious, they are rich in vitamins that are equal to or superior to those found in butter fat and will perform the same function as food elements, they should be classed in the same category and not banned by the Act. If however,

there is a well founded division of opinion, the judgment of the legislature will not be overthrown; the fact that an article is pure and not injurious is not material in a judicial inquiry. The question here does not challenge the purity and wholesomeness of filled milk. It merely bans it as a substitute for pure milk.

In fine, food values and the place of vitamins in the food is a subject that is still open for added knowledge. Well recognized food concepts of yesterday are being discarded because of scientific discovery. If, therefore, relators can show that notwithstanding their product is produced by substituting cotton seed oil or some other substitute for butter fat and vitamins it is wholesome and nutritious and that it is equal to or superior to whole milk as a food, the test prescribed in the last two cited cases is met and their product relieved from condemnation by the Act.

We have not overlooked the contention of petitioners to the effect that the motion of respondent to strike the answer admitted the wholesomeness and nutritive value of petitioner's product and since the sale was free from fraud, the legislature was powerless to prohibit it. This contention overlooks the doctrine of the two cases on which this opinion is grounded and the motion to strike the answer so alleges. As heretofore pointed out under the doctrine of these cases it is not enough to prove that the product is wholesome and nutritious but it must also be shown that appellant's product meets all the requirements of whole milk as a food product.

In this holding, we are not unmindful of the general proposition that the use of one's property and the making of contracts affecting it is a matter of private rather than public concern but it is equally as well

settled that such guaranties are not absolute. Freedom of contract and freedom in the use of one's property cannot be employed to the injury of the other fellow. Neither in a democracy like ours does personal right rise above the power of the public to regulate in the interest of the common welfare. Such is the modern interpretation of the police power.

It follows that the petition for certiorari is granted and the judgment below is affirmed in part but reversed in part.

Affirmed in part; reversed in part.

WHITFIELD, CHAPMAN, and THOMAS, JJ., concur.

BROWN, C. J., BUFORD, and ADAMS, JJ., dissent.

ADAMS, J., dissenting:

This case presents primarily two questions.

1st. Has the legislature the power to prohibit the sale of a food product which is admittedly wholesome and nutritious and sold without fraud merely because same is used as a substitute for another food?

2nd. Where the aforesaid statutory prohibition is based upon the legislative findings of fact, are such facts rebuttable in a judicial proceeding?

The act in question is based on a legislative finding of fact that "Filled Milk as defined in the act, is injurious to public health and a fraud upon the public.

The police power is the only basis to sustain acts of this character. This power is essential and inherent in all governmental bodies. 6 R.C.L. 183. Under it individual rights are subordinated to those of the State. It should be applied with caution and due regard for the rights of the citizen.

The majority opinion holds the act in question valid but remands the case to allow evidence to determine if defendant's product is one excepted from the act. The answer admits defendant's product is compounded as charged in the bill and as such is condemned by the act.

The supreme law which will ultimately control this case is found in the decisions of the Supreme Court of the United States. O'Gorman & Young v. Phoenix Assurance Company, 282 U. S. 251, 75 L. Ed. (Adv. 162), 51 S. Ct. 130; Hebe Co. v. Shaw, 248 U. S. 297, 63 L. Ed. 255, 39 S. Ct. 125; Chestleton Corp. v. Sinclair, 264 U. S. 543, 68 L. Ed. 841, 44 S. Ct. 405; Weaver v. Palmer Bros., 279 U. S. 402, 70 L. Ed. 654, 46 S. Ct. 320. From these decisions the law appears settled that the legislature is powerless to outlaw a wholesome and useful food product. And, too, where the statutory prohibition is based on facts found by the legislature to exist, those facts are presumed true but may be rebutted on proper showing.

In testing the order for error we must assume the stricken parts of the answers, i. e., that the product is wholesome, nutritious and marketed free of fraud, to be true. If true, then is the act good?

It is the writer's conclusion that the lower court was in error in striking the answers.

If the product is wholesome and nutritious there is no reason why it should not be available to the general public as long as the public is not misled as to the contents.

It sometimes happens that one economic group will successfully sponsor the passage of a law of this character, the result of which is to favor one food product in law to the detriment of another. In such instance,

it is the duty of the court, in appropriate proceedings, to strike down the act. We can take judicial notice that valuable, wholesome and nutritious oils are extracted from cotton seed, peanuts and fish livers. If the evidence will show that these oils will blend with skimmed milk and produce a wholesome food the petitioners have a property right in the same which is entitled to the protection of the law, and the general public has a right to use the same.

To hold the legislative findings of fact conclusive would take property without due process and would throttle the inventive genius which has given us so many useful products. As has been pointed out in some of the cited cases, the facts found by the legislature frequently change and for that reason they should not be conclusive.

It is the writer's view that the writ should be granted and the order striking the answers should be quashed.

BROWN, C. J., and BUFORD, J., concur.

BROWN, J., concurring in the above dissent:

Even if the Act could be held constitutional on its face, which I do not think could be, it seems to me that the answers filed by the defendant and intervenor in the court below, if true, each present a good defense to the bill. These answers in effect allege that while the butter fat has been extracted, its place has been filled with pure refined cotton seed oil to which the vitamins which are contained in butter fat have been added, making the product as wholesome and nutritious as if the butter fat itself had not been extracted. If these facts are proven then this statute cannot be constitutionally applied so as to prohibit the sale of

this product.  I think the court below erred in striking the paragraphs in the answers presenting this defense.  The motions to strike admitted these facts well pleaded in the answers for the purpose of obtaining the court's ruling thereon.  There is no question here of misbranding this product so as to deceive the public.  The containers were labeled so as to honestly show the nature and constituents of the contents.