**NATHAN MAYO, as Commissioner of Agriculture of the State of Florida, v. WINN & LOVETT GROCERY COMPANY, a Corporation.**

19 So. (2nd) 867                                    June Term, 1944
December 8, 1944                                         En Banc

*H. E. Carter* and *William C. Pierce,* for petitioner.

*Sam R. Marks, Harry T. Gray* and *Marks, Marks, Holt, Grey & Yates* and *J. Lewis Hall,* for respondent.

TERRELL, J.:

Winn & Lovett Grocery Company, respondent, filed its bill of complaint in the circuit court seeking to restrain the Commissioner of Agriculture, petitioner, from enforcing the provisions of the Florida Milk, Cream, and Milk Products Act, Chapter 502, Florida Statutes 1941, in relation to the sale of artificially colored oleomargarine. This is an appeal by certiorari from a decree of the chancellor overruling a motion to dismiss and granting a temporary injunction as prayed for in the bill.

The first question presented is whether or not the colored oleomargarine sold by Winn and Lovett Company is imita-

tion butter as defined and its sale prohibited by Chapter 502, Florida Statutes 1941.

Petitioner contends that respondent's product is in reality colored oleomargarine sold under the trade name of "All Southern Ready Mixed Vegetable Oleomargarine" and its sale is prohibited by Sections 502.02, 502.05, and 502.28, Florida Statutes 1941.

The chancellor rejected this contention holding in effect that Section 502.02 does not prohibit the sale of respondent's product, to hold that Section 502.02 prohibits the sale of imitation butter as defined by Section 502.01 would amount to outlawing the sale of oleomargarine in Florida, that it is apparent from the allegations of the bill of complaint that the sale of appellant's product does not violate Section 502.28 relating to the sale of imitation butter and that to otherwise construe Section 502.05 would amount to creating by the court an offense unknown to the common law and punishable by a fine of five thousand dollars.

Section 502.01 defines "imitation butter" as any product containing fat other than that derived from milk or cream and made in the appearance of butter or designed to be used for any of the purposes for which butter is used. It is clear from the allegations of the bill of complaint that respondent's product contains 80 per cent vegetable oil, approximately 4 per cent salt and other minor ingredients and 9000 U.S.P. units of Vitamin A.

Respondent contends that its product is a food compound manufactured from these products, that it is new and novel and in no sense an "imitation," that it is pure and wholesome, that it is basically a vegetable oil compound with a small percentage of skimmed milk added, that it is different from butter or imitation butter and that it is naturally of a yellow color but in the process of refining the vegetable oil is bleached and to restore the orginal color, annatto is added.

It is not open to debate that when Chapter 502 is construed as a whole, its purpose was to guarantee to the people of Florida wholesome and sanitary milk and milk products. We are also impressed with the view that it intended and provided for the sale of oleomargarine, Section 502.28, and

imitation butter, Section 502.06, because it recites the safe-guards and conditions under which either may be sold.

It is quite true that Chapter 502 prohibits the sale of any spurious preparation purporting to be butter, Section 502.28, whether sold as oleomargarine or by any other name but respondent's product is shown not to be such a preparation. The penalty for selling the spurious representation is a fine of not exceeding one hundred dollars or not exceeding thirty days in prison while the penalty for violating the Milk, Cream and Milk Products Act is a fine of not exceeding $5000 or not exceeding twelve months in the county jail.

In fine, while Chapter 502 was designed to guarantee the people of Florida wholesome and sanitary milk and milk products, it also defines the standard of products among which are imitation butter, filled cheese, and oleomargarine and authorizes their sale under restrictions named in the Act. Respondent calls its product "All Southern Ready Mixed Oleomargarine" and from the allegations of the bill of complaint it is selling it under that name and as required by the regulations oleomargarine is required to be sold under.

The validity of Chapter 502 in its application to filled milk was upheld in Setzer and Carolene Products Company v. Mayo, 150 Fla. 734, 9 So. (2nd) 280. As to imitation butter or oleomargarine, we find no reason to pass on its constitutional validity in this case. We have considered Carolene Products Company, Charles Hansen, and William H. Hartke v. United States and Sage Stores Company v. State of Kansas decided by the Supreme Court of the United States November 6, 1944, not yet reported but they are not controlling. There the Court was concerned with the application of the due process clause to an Act of Congress prohibiting the shipment in interstate commerce of foods known to be wholesome and nutritious and not "in imitation or semblance of milk." The Court held that the Act was one within the power of Congress to enact.

In the case at bar, we are confronted with an act designed to secure the people of Florida wholesome and sanitary milk products. It includes and authorizes the sale of imitation butter as a milk product. It also includes oleomargarine in

the same category. The act does prohibit the coloring of imitation butter with any substance, Section 502.05. Respondent's product is sold as oleomargarine under the original natural color of the oils used as a base and under the regulations required by the law. If there are inconsistencies in the standards governing the sale of different milk products sold under the Act, each product will be sold under its peculiar specifications. Respondent admits that it is selling oleomargarine and it is affirmatively shown that no regulation for the sale of that product is being violated.

The judgment is affirmed.

Affirmed.

BUFORD, C. J., BROWN, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.