SCHEB, Judge.
The trial court held the 1976 amendment to the no-fault insurance law, which prohibits aggregating or “stacking” of uninsured motorist coverage for each vehicle, does not apply where the insured obtained his policy prior to the effective date of the amendment. We disagree and reverse.
Robin Hoekstra was injured in an automobile accident on October 4, 1976, while driving a car owned by her guardian, Robert Bryar. Unfortunately, the car Robin collided with was not adequately insured to cover the injuries she sustained. Appellees, Mr. & Mrs. Bryar, filed a complaint for declaratory relief on Robin’s behalf, asking the trial court to determine whether the uninsured motorist coverage under Mr. Bryar’s policy could be stacked for the benefit of Robin, since all three of Mr. Bryar’s vehicles were covered by the insurance policy. In its answer Nationwide denied that coverage for the three cars could be stacked, as the legislature had amended the no-fault insurance law to prohibit stacking as of October 1, 1976, three days before the accident. After taking evidence, the trial court entered a partial summary judgment in favor of the appellees, holding that the 1976 amendment “cannot retrospectively affect the provisions of plaintiff ROBERT BRYAR’S insurance policy which was in effect prior to the effective date of said law.” The practical effect of this ruling is to allow Robin to stack coverage under Mr. Bryar’s insurance policy.[1] It is from this determination that Nationwide appeals.
In 1976 the legislature enacted Chapter 76-266, Laws of Florida, as a revision of the *1223 automobile liability insurance law of the state. Section 10 of Chapter 76-266 (now Section 627.4132, Florida Statutes [Supp. 1976]) prohibits the stacking of underin-sured motorist coverage. Section 16 provides, “This act shall take effect October 1, 1976, and shall apply to all claims arising out of accidents occurring on or after said date.”
Appellant Nationwide argues that the legislature has mandated that the antis-tacking provision should become effective on October 1,1976, and to allow stacking to continue beyond this point is a violation of the express intent of the legislature. On the other hand, appellees argue that if the legislative mandate is given literal effect, then Chapter 76-266 will impair the obligation of Bryar’s insurance contract with Nationwide, which was entered into prior to the effective date of the amendment. Therefore, the question becomes: If the antistacking provision of Section 10 of Chapter 76-266, which became effective October 1, 1976, applies regardless of when individual insurance policies were entered into, has the legislature impaired Nationwide’s contractual obligation to Bryar?
Article I, Section 10, Florida Constitution prohibits the passing of any law which impairs a contract. The federal constitution contains a similar provision. However, it has long been recognized by the courts of this state that the constitutional prohibition of the impairment of contracts stands on no higher plane than other constitutional provisions; i. e., that this provision should not itself “impair” the legitimate exercises of legislative authority. Shavers v. Duval County, 73 So.2d 684 (Fla.1954); Miami Bridge Co. v. State Railroad Commission, 155 Fla. 366, 20 So.2d 356 (1944); Setzer v. Mayo, 150 Fla. 734, 9 So.2d 280 (1942).
In analyzing impairment of contract problems, the courts have looked to whether the law in question is a legitimate exercise of the police power, and whether the measures taken are reasonable and appropriate. If the law is found to meet these criteria, no impairment will be found. Mahood v. Bessemer Properties, Inc., 154 Fla. 710, 18 So.2d 775 (1944); Lester v. City of St Pe-tersburg, 183 So.2d 589 (Fla.2d DCA 1966).
There can be little doubt that insurance is a proper subject for legislative concern. Insurance, because of its quasi-public nature, is especially appropriate for legislative control. 16A C.J.S. Constitutional Law § 378 (1956). In the past few years the legislature of this state has been increasingly occupied with the task of assuring that adequate insurance coverage will be available to protect the public with premiums within the reach of the citizens of the state.[2]
We think the legislature exercised its power reasonably and appropriately in the challenged section of Ch. 76-266. In Section 14 of Ch. 76-266, the Department of Insurance is required to review automobile insurance rates within sixty days of the effective date of the act “for purpose of insuring that premium or rate reductions resulting from the provisions of this act are being passed on to the insurance policy buy *1224 ers.” So the legislature, even though it has taken the benefit of stacking from the policy holder, has also attempted to assure that the policy holder will be compensated for any reduction in benefits. This seems reasonable and appropriate when considering the legislative purpose of attempting to reduce skyrocketing insurance rates, which may otherwise jeopardize the ability of drivers and owners to obtain insurance.
Finally, we point out that the governor signed Ch. 76-266 into law on June 27, 1976. So over three months elapsed from the time the new law was passed until it became effective. Mr. Bryar took out his insurance policy with Nationwide in March of 1976. However, the policy was renewable at six-month intervals until March 1981. Mr. Bryar exercised his first option to renew in September 1976, after Chapter 76-266 was signed into law, though before it became effective. Mr. Bryar would have us apparently extend stacking under his policy until 1981. We think that when Mr. Bryar renewed in September 1976, he was on notice of the impending effectiveness of the antistacking provision and should have obtained his insurance coverage with that knowledge.
Reversed and remanded to the trial court for further proceedings consistent with this opinion.
BOARDMAN, C. J., and OTT, J., concur.

. At this juncture a brief history of stacking seems appropriate: In Tucker v. Gov’t Employees Ins. Co., 288 So.2d 238 (Fla. 1974), the supreme court interpreted a policy, containing a clause prohibiting stacking, to allow stacking of the uninsured motorist coverage an insured had purchased for himself and his family. The court held that there was no statutory basis for an automobile insurer to exclude stacking in a policy combining liability coverage for two or more automobiles for the named insured with uninsured motorist coverage.
Although Tucker applied to uninsured motorist coverage, during the pendency of that litigation the legislature redefined “uninsured motorist” to include an underinsured motorist as well. The courts followed suit and held that stacking was permitted whether the motorist was uninsured or underinsured. State Farm Mutual Auto Ins. Co. v. White, 330 So.2d 858 (Fla.2d DCA 1976); see also, State Farm Mutual Auto Ins. Co. v. Anderson, 332 So.2d 623 (Fla.4th DCA 1976).
Yet, when faced with a problem outside the context of a family automobile policy, this *1223 court gave full effect to the antistacking provision of the contract. In Travelers Ins. Co. v. Pac, 337 So.2d 397 (Fla.2d DCA 1976), cert, denied (Fla.1977), Case No. 50,567, opinion filed June 12, 1977, we reversed a judgment which had allowed a person, who achieved his status of an insured simply by driving his employer’s vehicle, to stack the coverage of his employer’s fourteen additional vehicles.

. In 1971 the legislature passed the “Florida Automobile Reparations Reform Act,” Ch. 71-252, Laws of Florida, which instituted no-fault automobile insurance in Florida. The 1971 act modified private passenger automobile liability policies in effect on January 1, 1972. In 1976 the legislature revised the act quite extensively by enacting Ch. 76-266, Laws of Florida, which is involved in this case. Ch. 76-266, among other things, effectuated substantial changes in the benefits that an insurer was liable to pay under its policies then in existence. Again, the legislature has been at work revising the act during its 1977 session. See Ch. 77-468, Laws of Florida.