382 So.2d 92 (1980)
Durand HOLLADAY and James R. Dezell, Appellants,
v.
CITY OF CORAL GABLES, a Municipal Corporation, and the City Commission of the City of Coral Gables, Appellees.
No. 79-995.
District Court of Appeal of Florida, Third District.
March 25, 1980.
*94 Turner, Hendrick, Guilford, Goldstein & McDonald and S. Alan Stanley, Coral Gables, for appellants.
Floyd, Pearson, Stewart, Richman, Greer & Weil and Edwin P. Krieger, Jr., Miami, for appellees.
Before SCHWARTZ and NESBITT, JJ., and CHARLES A. CARROLL (Ret.), Associate Judge.
PER CURIAM.
This appeal was filed by the plaintiffs from a final summary judgment rendered in favor of the defendants, the City of Coral Gables, and the Coral Gables City Commission. We hold no reversible error has been shown, and affirm.
On November 7, 1977, the appellants Durand Holladay and James R. Dezell filed a complaint against the City and the City Commission for declaratory judgment and supplemental injunctive relief. Thereby, they sought a determination that under the Zoning Code of the City of Coral Gables it would be permissible for the owners of a described parcel of land [then owned by Durand Holladay and his wife] consisting of two platted lots, each of which had a street frontage of 100 feet and upon which parcel there existed one single family residence, to demolish the existing residence and construct two residences on said parcel, one on each of said 100 foot lots. The parcel involved consists of Lots 28 and 29 of Block 90, of Coral Gables Country Club Section, Part 5, with a street address of 4615 San Amaro Drive. The rear of said parcel abuts a portion of a golf course owned and maintained by Rivera Country Club. The defendants timely filed answer.
Thereafter on November 13, 1978, with leave of court, the plaintiffs filed an amended complaint. The defendants filed answer thereto, which included a number of affirmative defenses. The pleadings disclose the following. Dezell is a builder, the president of a construction company. Holladay is a member of the Florida Bar.
Prior to the purchase of the property Dezell inquired of Mr. John P. Little, Jr., the Zoning Administrator of the City, as to whether it would be permissible to demolish the existing residence on said parcel and construct new residences on each of the two lots on said building site. Mr. Little replied by letter dated April 19, 1977, that under the Zoning Code it would be permissible to do so.
At that time, by virtue of Ordinance No. 2058 passed in 1973, the Zoning Code (Section 8.02) had provided that a building site consisting of two or more platted fifty-foot lots upon which a single family residence had been constructed should not be diminished, and if the existing residence was demolished or removed no permit should be issued for construction of more than one residence building on the building site. The wording of Ordinance No. 2058, in pertinent part, was as follows:
SECTION 8.02 BUILDING SITES  `R', `D' AND `A' USES.
GENERAL
(1) Except as may be provided hereinafter to the contrary, in connection with replats, subdivisions and specifically described lots or parcels of land, no building or structure designed for an `R', `D' or `A' Use shall be constructed *95 or erected upon a building site having a street frontage of less than 50 feet; nor shall more than one such building or structure be constructed or erected upon any one platted lot; provided, however, that wherever there may exist a single family residence building which was constructed on a building site containing two or more platted fifty (50) foot lots, said building site shall not henceforth be reduced or diminished in any manner and if said residence building is demolished or removed therefrom, no permit shall be issued for the construction of more than one residence building on the building site.
On April 20, 1977, Coral Ridge Construction Corporation, of which Dezell was president, entered into a contract for purchase of the property. Prior to closing the purchase, and prior to June 6, 1977, Dezell was advised by Mr. Little that the Zoning Board was going to consider said matter at a meeting on that date. At such meeting, upon consideration thereof, the Zoning Board of the City of Coral Gables ruled contrary to the opinion which had been expressed by the Zoning Administrator with reference to the subject parcel, by its Resolution 1239-ZB entitled "A resolution by the Board granting the appeal and overruling the decision of the Zoning Administrator." Thereafter, on June 27, 1977, the purchase was consummated and the parcel was conveyed by the then-owner to Durand Holladay and Blanche F. Holladay, his wife, to whom the purchase contract had been assigned by the Dezell corporation. Holladay and Dezell had entered into an arrangement whereby Holladay would furnish the money necessary to acquire title to the property upon which Dezell would construct two new separate residences, and that profits derived on resale thereof would be divided equally between them.
A timely appeal of the Zoning Board's ruling was taken to the City Commission by Holladay, Dezell and Little. On July 26, 1977, the Commission affirmed and upheld the Zoning Board's decision by its resolution No. 21802 entitled "A resolution upholding a Zoning Board decision overruling approval of Zoning Administrator and denying request to divide property at 4615 San Amaro Drive into two separate building sites."
Elsewhere in the City's Zoning Code was a provision that review of such a decision of the Commission was to be made by petition for certiorari to the Circuit Court. No such petition for certiorari was filed. The decision of the Commission became final and binding on the parties upon expiration of the thirty-day period for such review. See Carlson v. Town of West Miami, 118 So.2d 835 (Fla. 3d DCA 1960), and cases cited there.
Thereafter, on September 27, 1977, the City Commission adopted Ordinance No. 2262 [effective thirty days thereafter]. By that ordinance Section 8.02 of the Zoning Code was amended to provide that where a single family residence or duplex was located on a building site containing one or more platted lots [with no reference to the size or frontage footage of the individual lots] such a building site should not thereafter be reduced or diminished and that if such single family residence or duplex should be demolished or removed therefrom no permit could be issued for construction of more than one such building on such building site.[1]
*96 At the time this action was filed, on November 7, 1977, the Zoning Code of the City had been amended as above stated. At no time prior to the filing of the action had the plaintiffs made application for any permit for demolition of the existing residence on the premises or for any construction thereon.
The amended complaint did not contain any challenge of the applicability of Ordinance No. 2262 to the subject parcel. It made no reference to that ordinance. Therein the plaintiffs challenged the earlier fifty-foot lot Ordinance No. 2058 as having been inapplicable to the subject property which involves 100-foot lots, and sought an adjudication that said Ordinance No. 2058 was void as applied by the Commission to the subject property, and the plaintiffs sought relief by mandatory injunction to require the City to issue permits for demolition of the existence residence building on the parcel and to issue permits for erection of single family residences upon each of the two 100-foot lots of which the subject building site is comprised.
In answer thereto the City pleaded that the City Commission's decision adverse to the plaintiffs in this connection, from which no review was sought by the plaintiffs by certiorari as provided for, was final and binding on the plaintiffs and that the amended complaint was without merit for that reason and also because under the Zoning Code as amended by Ordinance No. 2262, in effect when this action was filed, the use to which the plaintiffs desired to put the parcel is prohibited.
Both the plaintiffs and the defendants moved for summary judgment. In the summary judgment entered in favor of the defendants, the court held there was no showing of estoppel and that the Zoning Code as amended by Ordinance No. 2262, in effect when the action was filed, was controlling.
In so ruling the trial court was eminently correct. There was no valid claim of estoppel against the City. The opinion of the Zoning Administrator, which was obtained by the plaintiffs, was subject to appeal, and in fact was appealed to and reversed by the Zoning Board several weeks prior to the time the purchase of the property was consummated. No permits had been issued to the plaintiffs, nor were any ever applied for by them.
The Zoning Code as amended as it stood at the time of the filing of this action was controlling. City of Boynton Beach v. Carroll, 272 So.2d 171 (Fla. 4th DCA 1973); City of North Miami Beach v. Trebor Construction Corp., 296 So.2d 490 (Fla. 1974).[2]
Under the law at the time this action was filed, as evidenced by the Zoning Code as amended by said Ordinance No. 2262, what the plaintiffs sought to do with respect to this parcel was clearly and expressly prohibited. There was no contention in the amended complaint that Ordinance No. 2262 was enacted in bad faith, or vis-a-vis the claim of plaintiffs of a right to demolish the existing residence structure and build on each of the two lots of the site. A contention to that effect presented in the brief of the appellants is without merit. The ruling of the Commission that plaintiffs were not entitled to so proceed respecting the property had become final. No review had been sought thereof and no other action had been filed challenging that decision of the Commission prior to the *97 enactment of Ordinance No. 2262. That ordinance was a proper exercise of police power as the earlier similar ordinance relating to fifty-foot lots was so regarded in King v. City of Coral Gables, 363 So.2d 389 at 392 (Fla. 3d DCA 1978),[3] where the court said:
* * * * * *
We believe that a reasonable interpretation of Ordinance No. 2058 shows that it is inapplicable to the facts of the instant case. The obvious intent of the Ordinance was to prevent developers, etc., from coming into Coral Gables, tearing down existing residences on large lots, and then building more residences on smaller lots. A careful reading of the Ordinance, shows that the reduction, diminution, demolishment, and removal referred to therein pertains to a voluntary or intentional reduction, diminution, demolishment or removal.
* * * * * *
We must reject as unsound the argument of the appellants that the decision of the City Commission, holding that the Zoning Code as interpreted by the Commission prohibited the use to which the plaintiffs desired to put the subject property, amounted to legislation impairing the obligations of the contract plaintiffs had made that they would build houses on the separate lots. If two persons agree among themselves to perform some act that is prohibited by law, they may not validly contend that the law by which such act was prohibited is an impairment of their contract within the meaning and intent of the contract clause of the constitution. The constitutional inhibition of state legislative impairment of the obligations of contract does not extend to legislation that is a proper exercise of police powers. Shavers v. Duval County, 73 So.2d 684 (Fla. 1954); Nationwide Mutual Fire Ins. Co. v. Bryar, 349 So.2d 1221 (Fla. 2d DCA 1977).
We hold to be without merit the appellants' argument that Ordinance No. 2262, although in effect when their action was filed, should not be held to be controlling because it was not in effect prior to the decision made by the City Commission. See City of Boynton Beach v. Carroll, supra.
We hold to be unsound the appellants' argument that Ordinance No. 2262 was passed by the City "to avoid this case being determined under Ordinance No. 2058." When Ordinance No. 2262 was passed the matter in controversy had been decided and set at rest previously, by the July 1977 decision of the City Commission. The fact that in interpreting the earlier Ordinance No. 2058 as being applicable to this parcel the Commission may have been incorrect [a matter upon which we need express no opinion] is wholly immaterial in this subsequent action of the plaintiffs because the plaintiffs were bound by that decision of the Commission. Difference of opinion, which had occurred among officials of the City, as to whether the prohibition announced in Ordinance No. 2058 would apply to such a site having two 100 foot lots, was reasonable basis for the rewriting of that zoning provision, through enactment of Ordinance No. 2262, to remove the ambiguity and make clear that the zoning policy expressed in the earlier ordinance was applicable to such improved multilot parcels without regard to the amount of foot frontage of the lots involved.
Accordingly, the judgment is affirmed.
NOTES
[1] Ordinance No. 2262 provides the following:

Section 8.02 BUILDING SITES  R D AND A USES.
GENERAL
(1) Except as may be provided hereinafter to the contrary, in connection with replats, subdivisions and specifically described lots or parcels of land, all buildings or structures designed for an "R," "D" and "A" Use shall be constructed or erected upon a building site containing at least one (1) platted lot, and such building site shall have a street frontage of not less than fifty (50) feet.
Only one (1) single family residence, duplex or apartment building shall be constructed or erected upon any one platted lot having not less than the minimum street frontage required by this code.
Wherever there may exist a single family residence or duplex building which was heretofore constructed on a building site containing one or more platted lots or portion thereof, said building site shall not hereafter be reduced or diminished in any manner and if said single family residence or duplex building is demolished or removed therefrom, no permit shall be issued for the construction of more than one such building on said building site.
[2] Those decisions and the similar decision of the trial court in this case are in conformity with the recognized rule that the law as it stands at the time of decision is controlling, as that rule was applied in Davidson v. City of Coral Gables, 119 So.2d 704 (Fla. 3d DCA 1960), and Ingerson v. State Farm Mutual Automobile Ins. Co., 272 So.2d 862 (Fla. 3d DCA 1973), based on change in the law by act of the Legislature while the actions were pending; and in Florida East Coast Railway Co. v. Rouse, 194 So.2d 260 (Fla. 1967), based on a change of the law by judicial decision rendered after judgment and during the pendency of appeal.
[3] In the King case, where a single family residence located on a building site comprised of three 50-foot lots had been completely destroyed by fire, which the court referred to as "an involuntary and unintentional destruction of a residence by a casualty," it was held that the owner could build on the separate lots.