# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 12, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 12, 2022

ERIN L. LENNON
SUPREME COURT CLERK

**IN THE SUPREME COURT OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) ) ) | No. 98896-0 |
| Respondent, | ) ) | En Banc |
| v. | ) ) | |
| DOUGLAS DONALD FRASER III, | ) ) | Filed: May 12, 2022 |
| Petitioner. | ) ) | |

WHITENER, J.—In 2012, Washington voters approved Initiative 502, which legalized cannabis[1] for recreational use, as well as created a regulatory system for cannabis. In doing so, the initiative modified the driving under the influence (DUI) law and created a prong under which a person can be convicted of DUI depending on the level of tetrahydrocannabinol (THC) found in one's blood. Under RCW 46.61.502(1)(b) a person is per se guilty of DUI when one drives a vehicle and "[t]he person has, within two hours after driving, a THC concentration of 5.00 or higher

---

[1] We recognize that using the term "marijuana" instead of "cannabis" is rooted in racism. *See, e.g.*, Michael Vitiello, *Marijuana Legalization, Racial Disparity, and the Hope for Reform*, 23 LEWIS & CLARK L. REV. 789, 797-98 (2019) ("Advocates of criminalizing marijuana often made overtly racist appeals."). The transition from using the scientific "cannabis" to "marijuana" or "marihuana" in the early 20th century stems from anti-Mexican, and other racist and anti-immigrant, sentiments and efforts to demonize cannabis. *Id*. at 797-99. Our legislature has recently acknowledged this discriminatory origin and has enacted a law to replace "marijuana" with "cannabis" throughout the Revised Code of Washington with various effective dates depending on the statute. *See* LAWS OF 2022, ch. 16, § 1. Accordingly, unless quoting language or referring to the text of a statute, we use "cannabis."

*State v. Fraser*, No. 98896-0

[nanograms per milliliter (ng/mL)] as shown by analysis of the person's blood" (hereinafter the "per se THC prong").

Douglas Fraser III was convicted of DUI under the per se THC prong for driving with a THC blood level of 9.4 +/- 2.5 ng/mL within two hours of driving. On appeal, Fraser challenges the constitutionality of this prong of the DUI statute, claiming that the statute is not a legitimate exercise of the legislature's police power, that it is unconstitutionally vague, and that it is "facially unconstitutionally overbroad because no scientific evidence supports the conclusion that there is a per-se concentration of active THC at which all or most drivers would be impaired." Br. of Pet'r at 1.

We hold that this statute is constitutional and that it is a legitimate exercise of police powers as the limit is rationally and substantially related to highway safety. The research shows that the minimum 5.00 ng/mL limit appears to be related to recent cannabis consumption for most people (including chronic users), which is linked to impaired driving and highway safety, although there is no similar scientific correlation to impairment akin to the minimum 0.08 percent blood alcohol concentration (BAC) limit for alcohol. Further, there is a reasonable assumption that having the limit will deter people who have recently consumed cannabis from driving, thus reasonably and substantially furthering a legitimate state interest.

*State v. Fraser*, No. 98896-0

We hold that this statute is not vague because this specific 5.00 ng/mL limit does not lead to arbitrary enforcement, but rather it avoids arbitrary, erratic, and discriminatory enforcement.

Finally, we hold that this statute is not facially unconstitutional because there exists a circumstance under which the limit can be constitutionally applied even under Fraser's allegations of arbitrariness. Fraser's own expert testified that some people are impaired at a THC blood level of 5.00 ng/mL. Therefore, when someone who is impaired at 5.00 ng/mL consumes cannabis and drives, this limit would not be unconstitutionally arbitrary in that circumstance. Accordingly, we affirm Fraser's conviction.

FACTS AND PROCEDURAL HISTORY

On the evening of July 11, 2017, Washington State Patrol Trooper Victor Pendt pulled Fraser over for speeding, driving in the high occupancy vehicle lane while alone, erratically changing lanes, cutting off other drivers, and driving aggressively. Fraser was wearing an employee badge for a local cannabis dispensary. Fraser removed it after he saw Trooper Pendt notice it.

Trooper Pendt did not observe any odor of intoxicants but observed Fraser was sweating slightly, was exhibiting full body tremors, and had very dark gray circles under his eyes. Fraser provided his identification, registration, and insurance and apologized for his aggressive driving, saying he was in a rush to pick up his son.

3

*State v. Fraser*, No. 98896-0

Trooper Pendt asked Fraser to step out of the vehicle. Trooper Pendt asked to see Fraser's tongue and observed raised taste buds on the back of his tongue. Trooper Pendt testified this is consistent with someone who has recently smoked some substance. When asked if he had smoked anything other than cannabis, Fraser replied that he had not. Trooper Pendt testified that Fraser "admitted to smoking marijuana about half a day before the stop." 1 Clerk's Papers (CP) at 19-20. Fraser testified that it was the day prior, before he went to sleep, and was "at least 20 hours" before the traffic stop. *Id*. at 48. Fraser also testified that he did not feel impaired at the time of the stop.

During the stop, Trooper Pendt asked if Fraser would perform voluntary standardized field sobriety tests (SFSTs). Fraser indicated that he had physical injuries and was unsure if he could perform the tests. Trooper Pendt offered Fraser nonphysical SFSTs, and Fraser agreed to do those. During the tests, Trooper Pendt observed that Fraser's eyelids exhibited tremors and that Fraser was unable to properly estimate time, both of which are consistent with cannabis use per Trooper Pendt's training. Fraser also did not perform well on the "finger-to-nose test" in which the driver tries to touch the tip of their finger to the tip of their nose while being told which hand to use. *Id*. at 17-18. Based on the totality of circumstances, Trooper Pendt arrested Fraser for DUI. Fraser later consented to a blood draw within

4

two hours of driving. The test results showed that Fraser had a THC blood concentration of 9.4 +/- 2.5 ng/mL.

The State charged Fraser with DUI under the per se THC prong. Fraser moved to declare the per se THC prong unconstitutional, claiming it was unconstitutionally vague and was not a valid exercise of the State's police power. The court held two hearings on this issue. During the first hearing, Fraser presented the expert testimony of Dr. Sanil Aggarwal and multiple exhibits (articles and studies), which Fraser contends all indicate there is "no scientific support for the proposition that all drivers' ability to operate their vehicle is impaired if they have an active THC blood content of 5 ng/ml." Br. of Pet'r at 6.

Dr. Aggarwal testified to his extensive background and research into cannabis from a clinical and public health policy lens. Although he has not personally conducted any studies on cannabis impairment and driving, he testified that he has attended seminars by Dr. Marilyn Huestis, a leading researcher on cannabis use and driving, and that he is familiar with the literature. Dr. Aggarwal testified that around 2007-2008, experts in the field, including Dr. Huestis, indicated that coming up with a number for THC that was akin to the scientifically accepted 0.08 BAC level would be difficult and that experts were unsure if there was a comparable number. He testified that "most people already felt that even trying to find a number was going the wrong direction and that impairment should be looked at functionally," such as

reaction time, balance, and ability to perform tasks. 1 CP at 119. Some researchers believed that because of the variable issues with pharmacokinetics and cannabis, such as absorption rate, chronic versus occasional use, and body fat content, that there could not be a THC number akin to the 0.08 BAC to show impairment. Other researchers, recognizing that concrete numbers are of policy interest, came up with the 5.00 ng/mL number.

Dr. Aggarwal testified as to the differences between alcohol and cannabis in terms of how the body processes the substances. Where alcohol tends to follow a specific curve, cannabis has a different reaction within the body where the THC level initially drops but can then stay stored within fat cells in the body. Depending on the degree of cannabis use and one's body fat percentage, THC levels can vary person to person. Therefore, the level of THC in one's blood may be an indicator of how recently one used cannabis, but it is not correlated to cognitive impairment and motor performance. In addition, because of the medicinal properties of cannabis, its use can improve function when used to treat some symptoms. Dr. Aggarwal then went through the exhibits that Fraser presented, which will be discussed in more detail in the analysis section.

Dr. Aggarwal testified that he could not form an opinion on Fraser's level of impairment based on the results of the blood test performed. In addition, he testified that a person's THC blood level could not be determined without access to a

6

*State v. Fraser*, No. 98896-0

laboratory because of the variability in the ways cannabis can be consumed and how it reacts within the body. He concluded that a per se THC cutoff is not efficacious in preventing impaired driving because of the potential for false positives and false negatives in terms of impairment. Dr. Aggarwal recommended alternative tests, such as phone applications, that test levels of impairment from multiple sources (such as sleep deprivation, alcohol, and cannabis) that mimic tasks needed for driving.

On cross-examination Dr. Aggarwal conceded that although the 5.00 ng/mL figure cannot be generalized to the entire population, individual people could be affected by cannabis at that level and their driving could be impaired at that level.

At the conclusion of testimony, the trial court denied the motion to declare the per se THC prong unconstitutional and held that the per se THC prong is constitutional because it is a legitimate exercise of police power and it is not vague. In doing so, the court made detailed findings from many of the articles and studies Fraser provided. *See generally* 3 CP at 413-17 (discussing trial court's findings of fact as to the expert's testimony and exhibits). Although many of the articles concluded that there is not a standard THC blood level that indicates impairment (akin to the 0.08 limit for alcohol), the articles also concluded that impairment level is high after consuming cannabis and that those levels can be variable. Some studies concluded this means there should be no per se cutoff limit (instead focusing on learning and researching biological markers), while other studies indicated this

variability should lead to caution and conservative policies. In addition, in some studies there was concern that because of the rapid decline in THC levels, the per se cutoff could fail to detect impaired drivers below the limit or could flag chronic or heavy users who may not be impaired above the limit.

As to vagueness, the trial court concluded the statute creates a bright line rule that protects against arbitrary enforcement whereby a person who consumes cannabis is on notice if they drive that they may be above the legal limit, though they may not know their exact THC blood levels. The court reasoned that "Mr. Fraser, who worked at a dispensary and was a medical marijuana patient, consumed marijuana, showed signs of impairment and drove a motor vehicle. He accepted the risk that he may be above the per se limit." *Id*. at 418. The trial court also concluded this was a legitimate exercise of police power because "the per se limit is rationally tied to the legitimate state interest of deterring and/or preventing impaired driving." *Id*. at 419.

Fraser agreed to a stipulated facts bench trial, and the trial court found him guilty of DUI on the basis that his THC blood level was above 5.00 ng/mL. Fraser appealed to the Snohomish County Superior Court, which adopted the findings of fact and conclusions of law of the trial court and affirmed his conviction. Fraser appealed directly to this court, arguing that the per se THC prong is not a legitimate exercise of police power, is unconstitutionally vague, and is "facially

*State v. Fraser*, No. 98896-0

unconstitutionally overbroad" because of the science surrounding THC levels and impairment. Mot. for Discr. Review at 1. This court granted review and retained the case.[2]

ANALYSIS

### I.    Initiatives and Police Powers

We review constitutional questions de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

"An exercise of the initiative power is an exercise of the reserved power of the people to legislate." *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 204, 11 P.3d 762 (2000). "In approving an initiative measure, the people exercise the same power of sovereignty as the Legislature does when enacting a statute." *Id.*

As indicated above, in 2012, Washington voters approved Initiative 502, which legalized cannabis.[3] The initiative also modified RCW 46.61.502 to add the per se THC prong.  Prior to this modification, one could be found guilty of DUI of marijuana under former RCW 46.61.502(1)(b) (2011) if a person drove a vehicle "[w]hile the person is under the influence of or affected by intoxicating liquor or any drug."

---

[2] The Washington Association of Criminal Defense Lawyers and the Washington Foundation for Criminal Justice have filed amicus briefs in support of Fraser.

[3] There is much discussion in the parties' briefs and the amicus briefs about the background of Initiative 502 and the politics surrounding the initiative. This is not pertinent to the determination of whether this is a legitimate exercise of the lawmakers' police power and is therefore not addressed.

9

Statutes enacted by the people through the initiative process are presumed to be constitutional, and the party challenging the constitutionality of the statute bears the burden of proving unconstitutionality beyond a reasonable doubt. *Amalg. Transit*, 142 Wn.2d at 205. A party has met that burden when "argument and research show that there is no reasonable doubt that the statute violates the constitution." *Id*.

Under article I, section 1 of the Washington Constitution, "All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights." We have interpreted this to mean that "the State Legislature may prescribe laws to promote the health, peace, safety, and general welfare of the people of Washington." *State v. Brayman*, 110 Wn.2d 183, 192-93, 751 P.2d 294 (1988). "'[B]road discretion is thus vested in the legislature to determine what the public interest demands under particular circumstances, and what measures are necessary to secure and protect the same.'" *Id*. at 193 (alteration in original) (quoting *Reesman v. State*, 74 Wn.2d 646, 650, 445 P.2d 1004 (1968)). The legislature properly exercises its police power if the statute "(1) tends to correct some evil or promote some interest of the State, and (2) bears a reasonable and substantial relationship to accomplishing its purpose." *Id*. "Unless the measures adopted by the legislature in given circumstances are palpably unreasonable and arbitrary so as to needlessly invade

*State v. Fraser*, No. 98896-0

property or personal rights as protected by the constitution, the legislative judgment

will prevail." *Reesman*, 74 Wn.2d at 650.

When determining whether a statute is constitutional, "if a court can

reasonably conceive of a state of facts to exist which would justify the legislation,

those facts will be presumed to exist and the statute will be presumed to have been

passed with reference to those facts." *Brayman*, 110 Wn.2d at 193. Further, "where

scientific opinions conflict on a particular point, the Legislature is free to adopt the

opinion it chooses, and the court will not substitute its judgment for that of the

Legislature." *Id*.

Initially the parties disagreed as to the actual question before the court as it

pertains to police powers. Fraser contends that the question is whether, under the

current science regarding THC blood levels and impairment, a lawmaker could

reasonably conclude that a THC blood concentration of 5.00 ng/mL indicates that

someone's ability to drive is presumptively impaired. Reply Br. of Pet'r at 2.

Whereas, the State argues that the question is "'Could a lawmaker reasonably

conclude that Washington highways are safer with a per-se THC limit of 5 than they

would be without that limit?'" Br. of Resp't at 10. We agree with the State. Under

the two-part police powers test, we look to whether the statute tends to correct some

evil or promote some interest of the State and whether it bears a reasonable and

substantial relationship to accomplishing that purpose. Therefore, it is sufficient to

11

establish that the per se THC limit of 5.00 ng/mL is reasonably and substantially related to promoting the public's interest in safety on Washington's highways.

It is worth noting that in *Brayman*, defendants challenged the amendments to the DUI statute in which the legislature modified the per se alcohol prong that previously required analysis of the percentage of alcohol in one's blood to an analysis of the amount of alcohol in one's breath. 110 Wn.2d at 186. The defendants argued that the amendment to measuring breath alcohol instead of blood alcohol was in excess of the legislature's police powers because "breath alcohol content—is too indirectly related to impairment to justify the statute." *Id*. at 194. This court upheld the challenged statute as a legitimate exercise of police powers, concluding that the State presented sufficient evidence that breath alcohol is linked to impairment and that "[w]hile the record may establish that breath is a less direct measure of blood alcohol levels, it does not establish a lack of a reasonable and substantial relationship between breath alcohol and impairment." *Id*. at 195. However, this does not mean that there must be a link between impairment and the THC blood content limit akin to the 0.08 BAC limit as long as there is a reasonable and substantial relationship between the per se THC prong and the State's public safety interests.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Fraser*, No. 98896-0

> A. The per se 5.00 ng/mL THC limit is rationally and substantially related to preventing impaired driving and promoting highway safety

Fraser's main argument that this statute is not a valid exercise of police powers is that "[b]ecause the 5 ng/mL level lacks any scientific support, and because the consensus in the scientific community is that no per se limit can ever be identified, RCW 46.61.502(1)(b) <u>does not reasonably tend to correct any evil or promote a public interest.</u>" Br. of Pet'r at 19-20 (boldface omitted). Fraser's general characterization of the scientific evidence gives an incomplete picture. Also, his contention that the statute does not reasonably correct any evil or promote public interest is unpersuasive.

There is no dispute in this case that cannabis use can impair one's driving. Fraser provides multiple studies and an expert witness that confirm this fact. In addition, we agree with Fraser's contention that the researchers tend to agree that there is no one THC blood level that indicates impairment that is generalizable to everyone akin to the 0.08 BAC limit for alcohol because of many variable factors depending on route of consumption and body pharmacokinetics. *See, e.g.*, 3 CP at 490, ("It is difficult to establish a relationship between a person's THC blood or plasma concentration and performance impairing effects."), 513 ("'[t]here is no one blood or oral fluid concentration that can differentiate impaired and not impaired'"). In addition, many researchers, including Dr. Huestis and the former Michigan

13

*State v. Fraser*, No. 98896-0

Impaired Driving Safety Commission, are not in favor of a per se limit because of the poor correlation between THC levels and impairment. *See id*. at 469 (report from Michigan's Impaired Driving Safety Commission concluding that there is a poor correlation between THC blood content and impairment, and recommending against a per se limit), 508 (AAA Foundation for Traffic Safety concluding "a quantitative threshold for *per se* laws for THC following cannabis use cannot be scientifically supported" (boldface omitted)), 529 (Dr. Huestis and Michael Smith concluding, "Currently, science does not support the development of cannabinoid limits *per se* . . . in motor vehicles drivers because of the many factors influencing concentration-effect relationships.").

However, Fraser and both amicus briefs appear to gloss over important context surrounding those decisions and completely ignore that while THC blood levels do not correlate to impairment in the same way that the 0.08 BAC correlates to alcohol impairment, THC levels above 5.00 ng/mL do appear to indicate recent consumption in most people (including chronic users), and recent consumption is linked to impairment. Detecting and preventing impaired driving and cultivating highway safety is the exact evil that this law aims to prevent and the exact public safety the law seeks to promote.

The literature shows that often THC levels drop below 5.00 ng/mL within 3 hours of use, and for occasional users they are no longer detectable after 8 to 12

14

hours. *Id*. at 490. The National Highway Traffic Safety Administration concludes that people typically feel a high for 2 hours, with most effects returning to baseline within 3 to 5 hours, "although some investigators have demonstrated residual effects in specific behaviors up to 24 hours, such as complex divided attention tasks." *Id*. at 491. The Michigan Impaired Driving Safety Commission found that "[m]ost behavioral and physiological effects of $\Delta^9$-THC return to baseline levels within 3-6 hours after exposure" but that "[c]hronic cannabis use may also lead to impairment in driving-related tasks, even after cessation." *Id*. at 461. Cited studies also appear to conclude that even for chronic users, THC levels tend to fall below 5.00 ng/mL within 24 hours. Importantly, Dr. Huestis indicates that chronic users can show psychomotor impairment for three weeks after the last dose. *Id*. at 513.

In addition, high THC blood levels can be indicative of imminent impairment. The Michigan Impaired Driving Safety Commission cites to a study in which subjects' driving performance did not show impairment at the 30-minute mark after consumption of cannabis (when THC levels were highest), but it was "significantly worse" 80 minutes after smoking (when the THC levels had dropped). *Id*. at 466. It is within the interest of public safety to prevent drivers with high THC levels who are likely to imminently become impaired from continuing to drive after consuming cannabis.

Nonetheless Fraser argues,

15

*State v. Fraser*, No. 98896-0

> the Legislature has adopted a purely arbitrary standard as proof that an individual has engaged in behavior that is harmful to society. If the scientific community is unanimous that it is impossible to identify a blood THC concentration at which it can be presumed an individual's ability to drive is impaired, then adoption of any blood THC concentration will never "reasonably tend to correct some evil or promote some public interest" since there is no link between that standard and the likelihood the evil had been committed.

Reply Br. of Pet'r at 5 (quoting *City of Seattle v. Larkin*, 10 Wn. App. 205, 211-12, 516 P.2d 1083 (1973)).

While there may not be a universal THC blood level that is akin to the 0.08 BAC for alcohol impairment, the studies do show that THC levels above 5.00 ng/mL are indicative of recent consumption in most users, recent consumption generally leads to impairment as THC levels lower, and for chronic users there can be chronic impairment that lasts for weeks.  Fraser's own expert testified that some people *are* impaired at the 5.00 ng/mL THC level. 1 CP at 181. Although this limit may not be perfect in terms of identifying degree of impairment for all individuals, it is reasonably and substantially related to recent consumption, which is related to impairment.[4]

---

[4] Because cannabis is still illegal at the federal level, scientific research into the relationship between cannabis consumption and impairment has been limited. For decades, researchers have been severely constrained in their ability to obtain federal approval to legally access pharmaceutical-grade cannabis, specifically different varieties and formulations akin to those found in cannabis dispensaries, to use in research. *See, e.g.*, Britt E. Erickson, *Cannabis Research Stalled by Federal Inaction*, CHEMICAL & ENGINEERING NEWS (June 29, 2020), https://cen.acs.org/biological-chemistry/natural-products/Cannabis-research-stalled-federal-

16

Further, we agree with the State and the trial court that in addition to correcting some evil by punishing impaired drivers, the laws aim to deter people who have consumed cannabis from driving when there is a possibility they could be impaired, thus promoting some public interest of highway safety. *See* Br. of Resp't at 20-22; 3 CP at 421. Under *Brayman*, if we can reasonably conceive of a state of facts that would justify the legislation, we presume such facts exist and the law was passed in reference to those facts. Here, we find it reasonable to conceive of facts that people who have recently consumed cannabis will be deterred from driving because of the risk of conviction under a per se THC prong and that the highways will be safer because of it. Therefore, the court must presume such facts did exist when this law was enacted and that it was passed in reference to them.

---

inaction/98/i25 [https://perma.cc/7AKF-4TB3]. In 2021, the United States Drug Enforcement Administration (DEA) implemented new regulations aimed at approving more cannabis growing facilities, which should make it easier for researchers to access higher-quality and more varied research product. Meredith Wadman, *United States Set To Allow More Facilities To Produce Marijuana for Research*, SCIENCE (May 17, 2021), https://www.science.org/content/article/us-set-allow-more-facilities-produce-marijuana-research [https://perma.cc/E3BQ-KA4Y]; *DEA Continues to Prioritize Efforts to Expand Access to Marijuana for Research in the United States*, U.S. DRUG ENFORCEMENT ADMIN. (May 14, 2021), https://www.dea.gov/stories/2021/2021-05/2021-05-14/dea-continues-prioritize-efforts-expand-access-marijuana-research [https://perma.cc/9YES-4LF4]. Therefore, more accurate data on marijuana impairment may emerge that may support that we revisit the issue presented. *E.g.*, *State v. O'Dell*, 183 Wn.2d 680, 695, 358 P.3d 359 (2015) (court may adapt legal frameworks by considering "advances in the scientific literature"). However, we must remember "[i]t is not the province of this court to second-guess the wisdom of the [lawmakers'] policy judgment so long as the [lawmakers] do[] not offend constitutional precepts." *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 976 n.12, 977 P.2d 554 (1999).

17

The State persuasively cites to out-of-state cases in which other states have found that per se limits on THC blood levels or cannabis metabolites are rationally related to the State's interest in highway safety, although some also had the additional State's interest in deterring illicit drug use (with cannabis use being illegal). *See* Br. of Resp't at 22-24 (collecting cases). For example, in *Williams v. State*, the Supreme Court of Nevada upheld a law that criminalized driving with "two nanograms per milliliter of marijuana or five nanograms per milliliter of marijuana metabolite" as "rationally related to the State's interest in highway safety and in deterring illicit drug use." 118 Nev. 536, 540-41, 543, 50 P.3d 1116 (2002). Similarly, in *Love v. State*, the Supreme Court of Georgia held that their statute that criminalized driving with any amount of "marijuana metabolites" within one's bodily fluids was rationally related to the State's purpose of protecting the public. 271 Ga. 398, 401-02, 517 S.E.2d 53 (1999). The court ultimately found the statute unconstitutional on equal protection grounds as it treated medical cannabis users differently from illegal cannabis users and held that distinction to be arbitrary. *Id*. at 402.[5] We too find the per se limit on THC levels to be rationally and substantially related to highway safety. Accordingly, we hold that Fraser has not met his burden

---

[5] Interestingly, at the trial court, Fraser's counsel argued in his reply brief that "[t]he State can unquestionably ban any amount of drug while driving and provide no set per se standard of impairment tied to drug limits. When it sets drug limits though, those limits must be rationally related to impairment, not the legitimate state goal." 3 CP at 406. It is unclear why a ban on any amount could be rationally related to the goal of safety, but setting a limit must be tied only to impairment and not to the State's public safety interests.

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to prove unconstitutionality beyond a reasonable doubt. *See Amalg. Transit*, 142 Wn.2d at 205.

> B.     There is no statutory right to drive and consume cannabis

Fraser also contends that there is "a statutory right to consume marijuana and drive so long as the individual does not consume so much marijuana that his or her ability to drive is affected or impaired." Br. of Pet'r at 11 (underlining omitted). Fraser cites no authority for this proposition nor the proposition that because something is legal under a statute that it becomes a statutory right. Instead, he relies on two Court of Appeals opinions in which the Court of Appeals indicates that while it is not illegal to drink alcohol and drive, it is illegal to drink alcohol and drive when the alcohol affects driving. *Id*. at 12-13 (citing *State v. Gillenwater*, 96 Wn. App. 667, 669, 980 P.2d 318 (1999); *State v. Melcher*, 33 Wn. App. 357, 363, 655 P.2d 1169 (1982)). As the State observes, both of these cited cases rely on *State v. Franco* in which we opined that "although one can legally drink and drive, our [driving while intoxicated] law makes it perfectly clear that the two activities cannot be mixed to the extent that the drinking affects the driving, *or the driver has a 0.10 percent of alcohol in his blood*." 96 Wn.2d 816, 825, 639 P.2d 1320 (1982) (emphasis added) (citation omitted), *abrogated on other grounds by State v. Sandholm*, 184 Wn.2d 726, 364 P.3d 87 (2015). Therefore, while one can legally drink and drive, one can be found guilty of DUI when their driving is affected *or* their BAC is above the legal

19

*State v. Fraser*, No. 98896-0

limit. And if someone has a BAC above the legal limit, they are guilty of DUI even if their driving is not impaired.

The same is true for consumption of cannabis and driving. As the State indicates in its brief, although people are legally allowed to consume cannabis and drive, under the statute at issue they cannot consume cannabis and then drive if their driving is affected *or* if their THC blood levels are above 5.00 ng/mL. Therefore, the State correctly observes that "[t]here is no 'statutory right' to do something that the statute expressly forbids." Br. of Resp't at 9. And the DUI statute forbids driving a vehicle when one has a THC blood level over 5.00 ng/mL within two hours of driving.

Furthermore, Washington courts have *repeatedly* referred to driving as a privilege and not a right. *See, e.g.*, *Cannon v. Dep't of Licensing*, 147 Wn.2d 41, 50 P.3d 627 (2002) (referring to "driving privileges" throughout); *see also* RCW 46.20.308 (detailing revocation and denial of driving privileges procedures for refusing an implied consent test). Where driving itself is a privilege, there is certainly no right to drive after consuming cannabis just because both activities are legal under certain circumstances. Accordingly, the per se THC prong is not "needlessly invad[ing] property or personal rights as protected by the constitution," as there is no right to drive and no right to consume cannabis. *Reesman*, 74 Wn.2d at 650. Both

20

*State v. Fraser*, No. 98896-0

are regulated privileges. Again, Fraser has not demonstrated unconstitutionality beyond a reasonable doubt.

## II.   Vagueness

Fraser also alleges that the per se THC prong is unconstitutionally vague. "A vagueness challenge seeks to vindicate two principles of due process: the need to define prohibited conduct with sufficient specificity to put citizens on notice of what conduct they must avoid and the need to prevent arbitrary and discriminatory law enforcement." *City of Tacoma v. Luvene*, 118 Wn.2d 826, 844, 827 P.2d 1374 (1992).

> Under the due process clause of the Fourteenth Amendment [to the United States Constitution], a statute is void for vagueness if either: (1) the statute "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed"; or (2) the statute "does not provide ascertainable standards of guilt to protect against arbitrary enforcement".

*State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). "Impossible standards of specificity are not required," nor is "'mathematical certainty.'" *Luvene*, 118 Wn.2d at 844; *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988) (quoting *Grayned v. Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). "[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *Eze*, 111 Wn.2d at 27.

21

*State v. Fraser*, No. 98896-0

If a statute implicates First Amendment rights, then a defendant may bring a facial vagueness challenge. *Halstien*, 122 Wn.2d at 117. If, such as here, the statute does not implicate First Amendment rights, the statute "must be evaluated in light of the particular facts of each case." *Id*.

Fraser appears to be challenging only the second prong of the vagueness test and, in doing so, he appears to be reiterating his police powers argument under a different name.[6] He argues,

> The scientific consensus is that it is impossible to set any standard at which it can be accurately and scientifically established that a driver will be impaired by marijuana consumption. The selection of any such per se standard is the selection of a purely arbitrary standard. RCW 46.61.502(1)(b) "does not provide ascertainable standards of guilt to protect against arbitrary enforcement" because the standard of guilt in the statute has no relation to any particular driver's ability to operate his or her vehicle after consuming marijuana.

Br. of Pet'r at 22-23. Fraser thus challenges the per se THC prong's limit as arbitrary when the second prong of the vagueness doctrine examines whether the *enforcement* of the law is arbitrary.

"In addition to the requirement of fair notice, the due process clause requires that a penal statute provide adequate standards to protect against arbitrary, erratic, and discriminatory enforcement." *Douglass*, 115 Wn.2d at 180. "This forbids

---

[6] The State observes that at the trial court, Fraser claimed that the statute is vague because a person cannot know their specific THC blood levels prior to driving. Br. of Resp't at 25. Because Fraser does not argue that reasoning in his briefing to this court, we do not address that argument.

*State v. Fraser*, No. 98896-0

'criminal statutes that contain no standards and allow police officers, judge, and jury to subjectively decide what conduct the statute proscribes ... in any given case.'" *Am. Dog Owners Ass'n v. City of Yakima*, 113 Wn.2d 213, 216, 777 P.2d 1046 (1989) (alteration in original) (quoting *State v. Worrell*, 111 Wn.2d 537, 544, 761 P.2d 56 (1988)).

To determine whether a penal statute provides adequate standards for enforcement, the court looks to whether the statute prohibits conduct through "'inherently subjective terms.'" *Douglass*, 115 Wn.2d at 181 (quoting *State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984)). A statute is not necessarily vague just because it allows for a subjective evaluation from an officer but is unconstitutional "only if it invites an inordinate amount of police discretion." *Id*.

RCW 46.61.502 reads,

> (1) A person is guilty of driving while under the influence of intoxicating liquor, marijuana, or any drug if the person drives a vehicle within this state:
>
>      ....
>
>      (b) The person has, within two hours after driving, a THC concentration of 5.00 or higher as shown by analysis of the person's blood.

Accordingly, a person violates this statute if they drive a vehicle and have a THC blood level of 5.00 ng/mL or higher. No aspect of the per se THC prong is subjective. Whether Fraser drove a vehicle or had the requisite level of THC in his blood is not

23

*State v. Fraser*, No. 98896-0

a discretionary decision from a criminal justice actor deciding whether his conduct meets a subjective statutory standard.

The trial court correctly concluded that the per se THC prong "does not allow for arbitrary law enforcement decisions as to whether the statute has been violated. To the contrary, it creates a bright line." 3 CP at 418. This statute creates an objective, bright line rule that *anyone* who is above a THC blood level of 5.00 ng/mL while driving can be charged under this prong. This does not lead to arbitrary enforcement based on a subjective interpretation of the conduct in relation to the statute at issue. Accordingly, this statute is not unconstitutionally vague.

III.    Facial Unconstitutionality

"[A] successful facial challenge is one where no set of circumstances exists in which the statute, as currently written, can be constitutionally applied." *Moore*, 151 Wn.2d at 669. The remedy for facial unconstitutionality "is to render the statute totally inoperative." *Id*.

Fraser argues that the per se THC prong is facially unconstitutional because it "is scientifically demonstrably arbitrary and unrelated to the question of whether any particular driver was driving while impaired by marijuana consumption." Br. of Pet'r at 23. He provides little further explanation for *why* this means there is no set of circumstances in which this statute could be applied constitutionally or *why* a limit on THC blood levels is "in no way related" to preventing impaired driving. *Id*.

24

*State v. Fraser*, No. 98896-0

Instead, as the State observes, he again appears to be rehashing his police powers argument under a different name. Br. of Resp't at 28.

Fraser's argument is premised on this statute being in excess of the police powers and, therefore, unconstitutional. However, as concluded above, the per se THC prong is a legitimate exercise of police powers. Fraser's own expert testified that some people *are* impaired at 5.00 ng/mL. Therefore, even assuming the truth of Fraser's own contentions about the arbitrariness of the standard, there exists the circumstances in which this statute can be constitutionally applied under his framework: when someone who has a THC blood level of 5.00 ng/mL is impaired by cannabis and drives. Accordingly, we hold that this statute is not facially unconstitutional.

CONCLUSION

We affirm the conviction. We hold that the per se THC prong is a legitimate exercise of the lawmakers' police powers, is not unconstitutionally vague, and is not facially unconstitutional.

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Fraser*, No. 98896-0

Whitener, J.

WE CONCUR.

González, C.J.

Stephens, J.

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

26